UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA LUCIA O.G..,[1] <br><br> Petitioner, <br><br> v. <br><br> SERGIO ALBARRAN, et al., <br><br> Respondents. | No. 1:26-cv-00010-TLN-DMC <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Diana Lucia O.G.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only her first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

### I. FACTUAL BACKGROUND[2]

Petitioner is a citizen of Colombia and an asylum applicant in the United States. (ECF No. 2 at 2.) Petitioner came to the United States on March 11, 2023. (*Id*.) The next day, immigration authorities released her into the interior to pursue her asylum application. (*Id.*)

For over two and a half years, Petitioner established a life in the United States and complied with the conditions of her release. (*Id*.) She lives with her husband and two minor children. (*Id.*) Petitioner reports that she maintained a valid address with immigration authorities and appeared to appointments as required. (*Id*.) Petitioner also reports that she has never been arrested and has no criminal history. (*Id.*) Petitioner's immigration case is ongoing and there is no final order of removal. (*Id.* at 4.)

Nevertheless, at a routine U.S. Immigration and Customs Enforcement ("ICE") check-in on October 11, 2025, Petitioner was detained by ICE, without notice, explanation, or an opportunity to be heard. (*Id.* at 2.) Petitioner states: the U.S. Department of Homeland Security ("DHS") had not identified any material change in circumstances; they did not claim she was a danger to the community or a flight risk; and Petitioner had not violated any condition, committed any crime, or failed to appear. (*Id.*) Since Petitioner has been detained, no immigration judge has conducted a custody hearing. (*Id.*)

Petitioner has been detained for nearly three months without a hearing. (*See id.*) Petitioner now challenges the lawfulness of her civil detention and seeks immediate release. (*See* ECF Nos. 1, 2.)

### II. STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that she is likely to succeed on the merits, [2] that she is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in her favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v.*

---

[2] The instant factual background is taken largely verbatim from Petitioner's brief in support of her motion for TRO. (ECF No. 2.)

2

*Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III. ANALYSIS[3]

#### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on her claims that her detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[4] The Court discusses each claim in turn.

##### i. Violation of the INA

First, Petitioner has established a likelihood of success on her claim that her detention is unlawful under the INA. (ECF No. 2 at 6–8.) Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain the individual. *Id.* Further, § 1226(a) provides several layers of review for an initial custody determination. *Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the

---

[3] The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without notice. *See* Fed. R. Civ. P. 65(b). Petitioner notified Respondents via email that she would be filing the motion and served copies of the documents. (*See* ECF Nos. 2 at 5; 2-1.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[4] Petitioner also alleges that her detention violates substantive due process. (ECF No. 1 at 15.) Considering this Court's findings that statutory and procedural due process violations warrant the requested relief, the Court need not address Petitioner's cumulative claims.

3

opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.

Petitioner claims she was released in 2023 under § 1226(a) and claims that § 1226(a) governs her current detention, rather than § 1225(b).  (ECF No. 2 at 6–7.)  Petitioner further asserts she is entitled to the procedural due process mandated by § 1226(a).  (*Id.*)

The Court agrees.  As this Court, and many others, have repeatedly found: § 1225(b) applies only to noncitizens "seeking admission" — a category that does not include noncitizens like Petitioner who were detained within the United States.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position).  This Court has made its position clear; absent a higher court order holding otherwise, this Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b).  Petitioner is instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum.  Yet, Respondents have not provided any hearing to Petitioner either pre- or post-detention.  Accordingly, Petitioner is likely to succeed on the merits of her claim that Respondents have violated the INA and improperly subjected her to mandatory detention without a hearing.

### ii. Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### a) Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in her continued freedom after she was released from custody in March 2023. Under *Morrisey*, this release implied a promise that she would not be re-detained, during the pendency of her immigration proceedings, if she abided by the terms of her release. For over two and a half years, Petitioner asserts she consistently complied with the conditions of her release and appeared at immigration appointments. (ECF No. 2 at 2.) Also in that time, Petitioner complied with all laws, was never arrested, and has no criminal history. (*Id.*) Petitioner also built a life in the United States with her husband and two minor children. (*Id.*) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in her continued freedom as she awaits the outcome of her immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083,

1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### b)  *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established her due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for over two and a half years and built a life with her family here.  Despite that, Petitioner has now been detained without any notice, explanation, or opportunity to be heard.  She is unable to be with her family and care for her minor children. Her detention is also disrupting her ability to communicate with her counsel and pursue her asylum claim. (ECF No. 2 at 10.)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Also, Petitioner was not provided any notice or reason for her detention.  (*See generally* ECF No. 2.)  Petitioner asserts that she complied with all conditions of her release and has never been arrested. (*Id* at 2.)  Indeed, Petitioner's compliance led to her detention, as she was arrested at a routine ICE check-in. (*Id.*)  Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of her liberty interest. Without any procedural safeguards to determine whether her detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

6

TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum case is ongoing and there is no final order of removal. (ECF No. 2 at 4.) Additionally, before releasing her in 2023, immigration authorities likely found that Petitioner was not a danger to the community nor a flight risk and, in the subsequent years, Petitioner complied with all laws and conditions of her release. (*Id.* at 2.) As stated above, Petitioner's arrest is evidence of her compliance because it occurred during a routine check-in. (*See id.*) Therefore, on these facts, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Additionally, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a), which Petitioner contends, and this Court has found, applies to Petitioner. Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on her immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the

1  State could be expected to provide." *Id.* at 129.  Here — where Petitioner has substantially
2  complied with the conditions of her release, has been previously determined not to be a flight risk
3  or a danger, has never been arrested, and removal is not reasonably foreseeable — the Court finds
4  pre-deprivation notice and a hearing are possible and valuable to preventing erroneous
5  deprivation of liberty.
6        On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to
7  pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents
8  did not provide either.  Moreover, Petitioner asserts that Respondents have not provided any post-
9  deprivation process.  Accordingly, with respect to her procedural due process claim, Petitioner
10  has shown she is likely to succeed on the merits.
11        B.    <u>Irreparable Harm</u>
12        Petitioner has also established she will suffer irreparable harm in the absence of a TRO.
13  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration
14  detention," including "subpar medical and psychiatric care in ICE detention facilities, the
15  economic burdens imposed on detainees and their families as a result of detention, and the
16  collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Without
17  relief, Petitioner faces the prospect of significant additional time in detention and continued harm
18  while she awaits a decision on her immigration case.  Her detention also disrupts her
19  communication with counsel and impairs her ability pursue her asylum claim.  (ECF No. 2 at 10.)
20  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably
21  constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)
22  (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Thus, Petitioner has sufficiently established
23  irreparable harm.
24        C.    <u>Balance of Equities and Public Interest</u>
25        As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the
26  balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F.
27  Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092
28  (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities

1    tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed
2    in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S.*
3    *Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public
4    interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.
5    Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention
6    are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June
7    14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondents to release
8    Petitioner from unlawful custody and refrain from re-detention unless and until they comply with
9    constitutionally required process is both *de minimis* and clearly outweighed by the substantial
10   harm Petitioner will suffer if she continues to be detained.  In sum, these last two factors weigh in
11   Petitioner's favor.
12       Therefore, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's
13   immediate release on the same terms as she was released prior to her detention.  *See Yang v.*
14   *Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025)
15   (status quo ante is "the last uncontested status which preceded the pending controversy.").

16       **IV.   CONCLUSION**
17       Accordingly, IT IS HEREBY ORDERED:
18   1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.
19   2. Respondents must IMMEDIATELY RELEASE Petitioner Diana Lucia O.G. from
20      custody.  Respondents shall not impose any additional restrictions on her, unless such
21      restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
22   3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining
23      Petitioner absent compliance with constitutional protections, including seven-days' notice
24      and a pre-deprivation hearing before a neutral fact-finder where Respondents show:
25      (a) material changed circumstances demonstrate a significant likelihood of Petitioner's
26      removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and
27      convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the
28      community or a flight risk.  At any such hearing, Petitioner shall be allowed to have

1  counsel present.

2  4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a
3  preliminary injunction continuing this Order. Respondents shall file responsive papers by
4  **January 9, 2026**. Petitioner may file a reply, if any, by **January 14, 2026**. **The parties**
5  **shall indicate in their briefing whether they waive a hearing**. Fed. R. Civ. P. 65(b)(3).
6  The Court will consider any stipulation and proposed order filed by the parties if they
7  agree to a less demanding briefing schedule.

8  5. Petitioner is ORDERED to immediately serve this Order and all documents filed in this
9  case to date on Respondents, including a copy via email to: usacae.ecf2241-
10 imm@usdoj.gov. **Petitioner shall file a proof of such service by 10:00 a.m. on**
11 **January 5, 2026**.

12 6. Respondents are hereby notified of their right to apply to the Court for modification or
13 dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

14 7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts
15 regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015
16 (9th Cir. 2011).

17 8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name
18 and last initials.

19 IT IS SO ORDERED.

20 Date: January 3, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE